Filed 5/20/13  Pedroza v. Pedroza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER D. PEDROZA, a Minor, etc., et al., | D060263 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2009-00082385-CU-PA-CTL) |
| ANGELA PEDROZA, as Executor, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Linda B. Quinn, Judge.  Affirmed.

Neil, Dymott, Frank, McFall & Trexler, David P. Burke and Andrea P. Bayly for Defendant and Appellant.

James E. Friedhofer; Law Offices of Robert Ryan and Robert Ryan for Plaintiffs and Respondents.

Angela Pedroza, as the executor of the Estate of John P. Pedroza, Sr., (the Estate) appeals from a jury verdict in a personal injury and wrongful death lawsuit against the

Estate by the surviving passengers of an automobile accident in which John P. Pedroza, Sr. (Pedroza, Sr.) was the driver. The Estate contends that the verdict against it should be reversed because of purportedly erroneous evidentiary rulings and because substantial evidence did not support the verdict. We conclude that the Estate's arguments lack merit, and we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of January 9, 2009, members of the Pedroza family were on a long-distance drive through Mexico on their way home to San Diego. In their van were the mother and father, Rosa Garcia and Raymond Pedroza, Sr.; the 10- and 13-year-old sons, Raymond M. Pedroza, Jr., and Christopher D. Pedroza; and the paternal grandfather, Pedroza, Sr. The family had been driving since the previous morning, stopping only for short breaks to buy gas, to eat or to use the restroom. The father and grandfather (Raymond Pedroza, Sr., and Pedroza, Sr.) were taking turns driving, with each having driven twice by the time they reached Altar, Mexico, near the city of Hermosillo, at approximately 6:00 a.m. While Pedroza, Sr., was driving, the van crashed into the side of a large tractor-trailer truck that was parked on the side of the highway near the entrance to a convenience store and gas station in Altar. Only the children (Raymond and Christopher) survived the crash, with both of them sustaining injuries that required hospitalization.

Raymond and Christopher, through their guardian ad litem Maria Refugio Garcia (collectively, plaintiffs), filed a lawsuit against the Estate alleging that Pedroza, Sr.,

2

negligently operated a motor vehicle. They sought to recover for the wrongful death of their parents and for their own injuries. The original complaint also included claims against the owners and operators of the truck involved in the collision, but those defendants were dropped from the amended complaint.

No witness testified at trial who saw the collision occur. However, plaintiffs presented details of the accident through the testimony of (1) a convenience store worker, Maria del Socorro Portillo Rodriguez (Portillo), who heard the crash and saw its immediate aftermath; and (2) a journalist, Rafael Leon Pineda (Pineda), who arrived shortly after the collision and took photographs of the scene, some of which were displayed to the jury.

Both Portillo and Pineda, referring to photographs and to their recollection, testified that the truck involved in the collision was parked in a shoulder area of the highway that was separated from the four lanes of traffic by a dotted white line. Portillo and Pineda both explained that under Mexican traffic law, a dotted white line next to the highway indicates a rest area where vehicles can park, and trucks regularly park where the truck was parked during the collision. The photographs and Portillo's and Pineda's testimony established that during the collision, the truck was parked completely within the area indicated by the dotted white line and was not protruding into the lane of traffic. The photographs showed that the van crossed over the dotted white line and hit the side of the parked truck at an angle and at a high enough speed to cause major damage to the van and to kill three of the van's five occupants. There was no evidence of a tire blowing out, screeching brakes, skid marks on the road or the sound of a car horn that would have

3

indicated an attempt to stop or take evasive action. Portillo testified that the area in which the truck was parked was illuminated by the lighting of the convenience store, and the truck also had on small lights around the trailer and its rear. According to witness testimony, no rain or clouds were present on the morning of the collision.

In a special verdict, the jury found that Pedroza, Sr., was negligent,[1] and judgment against the Estate was entered in the amount of $2,061,581.60, inclusive of costs.

II

DISCUSSION

A.  *The Estate Did Not Preserve the Argument that Testimony About the Location of Truck Was Improperly Admitted Lay Opinion*

The Estate contends that the trial court abused its discretion by (1) admitting testimony from Portillo and Pineda that the area in which the truck was parked was a designated parking and rest area under Mexican traffic law, and (2) allowing Pineda to state that the van driven by Pedroza, Sr., "invaded" the area in which the truck was parked.[2] According to the Estate, the testimony consisted of improper lay witness

---

[1]   In assigning a percentage of responsibility for the harm to plaintiffs, the special verdict form assigned 80 percent of the responsibility to Pedroza, Sr., and 20 percent of the responsibility to "Other."

[2]   Specifically, Pineda gave the following testimony during questioning by plaintiffs' counsel that the van "invaded" the truck's area:
   "Q:   And what was your observation with respect to the angle, if any, or the position of the van with respect to the dotted white line?
   "A:   The one that came into that lane was the van.
   "Q:   And what was your observation with respect to the angle of that, or the position of that van?

4

opinion testimony because it concerned matters "sufficiently beyond the competence of common persons" and should have been presented through an expert witness.

The argument fails because counsel for the Estate did not preserve the objection in the trial court.

"Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.' Pursuant to this statute, '". . . 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable,"'" and the defendant forfeits his appellate arguments based on the erroneous admission of the evidence. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21.) "'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'" (*People v. Partida* (2005) 37 Cal.4th 428, 434.) "What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond

"A:  It was the one that came in, the one that invaded, let's say, invaded that place.
"Q:  Now, why do you use the word 'invaded'?
"A:  Because it shouldn't have been driving into that lane."

5

appropriately and the court can make a fully informed ruling." (*Id*. at p. 435.) Even when counsel raises an objection at some point in the proceedings but fails to obtain a ruling on the objection, "counsel's failure to obtain a ruling is fatal to defendant's appellate contention, for a party objecting to the admission of evidence must press for an actual ruling or the point is not preserved for appeal." (*People v. Hayes* (1990) 52 Cal.3d 577, 619.)

Here, it is undisputed that, during Pineda's and Portillo's testimony, counsel for the Estate made no objection to the admission of the evidence that it now claims should have been excluded.

The Estate contends that although it did not object during Portillo's and Pineda's testimony, it preserved the objection during pretrial discussions of jury instructions and motions in limine. Specifically, the Estate points to discussions of a proposed jury instruction on opinion testimony of lay witnesses. While discussing that jury instruction, the trial court asked whether the parties would be presenting lay witness opinion testimony. Plaintiffs' counsel indicated, "We may have some." Counsel for the Estate stated, "Your Honor, I think that if anything tries to come in, you'll hear objections." Plaintiffs' counsel agreed, explaining that "[o]n both sides you're going to hear objections, but it may — both sides may try to introduce some opinion testimony of lay witnesses." When Plaintiffs' counsel stated that he did not currently know what kind of lay witness opinion testimony might be presented, counsel for the Estate stated, "Your Honor, I don't think that there is any lay opinion testimony in a case like this that's proper." The trial

6

court ended the discussion by stating "We'll reserve on that." The record reflects no further discussion about the admissibility of lay witness opinion testimony.

Indeed, at no point did counsel for the Estate ever indicate that he objected to a lay witness testifying about the proper designation, under Mexican traffic law, of the area in which the truck was parked. On the contrary, during a pretrial hearing the next day, when discussing whether plaintiffs had made a judicial admission in the original complaint about the location of the truck, plaintiffs' counsel stated that, during Pineda's testimony, he would inquire about how to characterize the lane where the truck was parked. Counsel for the Estate expressed no objection to such a line of questioning. Further, as we have discussed, counsel for the Estate made no objection whatsoever during Portillo's and Pineda's testimony as to the admission of the evidence that the Estate now contends should not have been admitted.

The Estate contends that it would have been futile for counsel to make an objection during Portillo's and Pineda's testimony because the trial court had already indicated it would admit the testimony. (See *People v. Chavez* (1980) 26 Cal.3d 334, 350 fn. 5 [argument that admission of witness's prior statements violated defendant's constitutional rights was cognizable on appeal, despite lack of objection in trial court, when an objection would have been futile due to the current state of the case law on the issue].) The record does not support such an assertion. As we have explained, when the parties raised the issue of lay opinion testimony during a pretrial hearing, the trial court expressed no view at all and simply reserved the issue, with an implicit understanding that, as counsel both indicated, they would object during trial if opposing counsel

7

attempted to introduce objectionable testimony. Further, when counsel for the Estate *did* make a specific objection at trial to the admission of lay witness opinion testimony on Mexican traffic law, the trial court was receptive to the objection and sustained it. Specifically, plaintiffs' counsel asked Pineda whether a sign with an "E" is required if the shoulder of a highway is intended to be used as a parking or rest area. Counsel for the Estate objected on the basis that the question "calls for expert testimony." The trial court sustained the objection, and it sustained a further objection when plaintiffs' counsel reworded the question by basing it on Pineda's personal driving experience. In light of this ruling, and the trial court's specific reservation on the general issue of the admissibility of lay opinion testimony, the Estate cannot establish that it would have been futile to make a similar objection to admission of other lay opinion testimony about Mexican traffic law.

In sum, counsel for the Estate simply never indicated any objection to Portillo's and Pineda's testimony about the proper designation, under Mexican traffic law, of the area in which the truck was parked and did not object to Pineda's testimony that the van "invaded" a lane where it was not supposed to be driving. The trial court had no opportunity to pass on the admissibility of such evidence, and the Estate therefore may not complain on appeal that the evidence was improperly admitted.

B.      *The Trial Court Did Not Abuse Its Discretion in Rejecting the Estate's Contention that the Original Complaint Contained a Judicial Admission as to the Location of the Truck*

During pretrial motions, the Estate argued that the trial court should treat a statement in the original complaint about the location of the truck at the time of the

8

collision as a binding judicial admission by plaintiffs on that subject. Counsel for the Estate explained, "If they're going to try to put on evidence during this trial that is contrary to their admission that the vehicle was stopped in a lane of traffic, . . . I'm going to be objecting to it, because it's an issue that should already be conclusively proved."

At issue is a statement in plaintiffs' original complaint relevant to the claims against the owners and operators of the truck involved in the collision. The original complaint alleged, "An 18-wheel truck owned by defendant A. Perez Alba and 'Transportes Refrigerados "Peral"' operated by defendant Eduardo Perez Garcia, is believed to have been parked on the side of the highway to Santa Ana Sonora, Mexico, with a portion of it sticking onto the lane of traffic." Along with removing the owners and operators of the truck as defendants, the amended complaint deleted that allegation, pleading instead that the truck "is believed to have been parked on the side of the highway." The trial court rejected the Estate's argument that plaintiffs should be bound to their pleading that the truck was "sticking onto the lane of traffic" and barred from presenting evidence to the contrary, but it allowed the Estate to introduce evidence of the original complaint's allegation to the jury.

"The admission of fact in a pleading is a 'judicial admission.'" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) "'"A judicial admission in a pleading . . . is not merely evidence of a fact; it is a conclusive concession of the truth of a matter which has the effect of removing it from the issues . . . ."'" (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 218.) "Well pleaded allegations in the complaint are binding on the plaintiff at the trial." (4 Witkin Proc., Pleading, § 455,

9

p. 587.) "[T]he trial court may not ignore a judicial admission in a pleading, but must conclusively deem it true as against the pleader." (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1156.)

However, "[a] judicial admission is a party's *unequivocal* concession of the truth of a matter . . . ." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48, italics added.) "An unclear or equivocal statement does not create a binding judicial admission." (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 385.) Thus, for example, a party's testimony that an event "'probably'" occurred on a certain date, was too equivocal to constitute a judicial admission. (*Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 515-516 (*Howard*); see also *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1066 [judicial admission was not created by "an ambiguous statement in an unverified complaint"]; *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596 [observing in dicta that "[m]aking a statement on information and belief . . . might avoid a judicial admission].)

We apply an abuse of discretion standard of review to the trial court's conclusion that plaintiffs did not make a binding judicial admission about the location of the truck. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871.)

Here, the original complaint did not make an unequivocal statement admitting that the truck was sticking into the lane of traffic. Instead, the original complaint expressly stated a *belief* about the location of the truck. As plaintiffs' counsel explained to the trial court during motions in limine, and as witness testimony established during trial, that allegation was amended because the belief was *disproved* when the parties obtained more

10

evidence about the circumstances surrounding the collision. When applying the doctrine of judicial admissions, "[a] court may disregard fragmentary and equivocal statements, especially when contradicted by other credible evidence." (*Howard*, *supra*, 187 Cal.App.4th at p. 516.) The trial court was within its discretion — in light of the equivocal nature of the original complaint's allegation and the clear photographic evidence showing that the truck was not sticking into the lane of traffic — to conclude that plaintiffs did not make a judicial admission about the location of the truck.

C.      *The Trial Court Did Not Abuse Its Discretion in Sustaining an Objection to Questions About the Status of a Witness's Visa*

The Estate contends that the trial court prejudicially abused its discretion in sustaining an objection when counsel attempted to elicit testimony about the status of Pineda's visa to be in the United States. According to the Estate, the excluded testimony was relevant because it could have called into question Pineda's credibility.

During direct examination of Pineda on March 29, 2011, plaintiffs' counsel engaged Pineda in the following line of questioning:

"Q.     Mr. Pineda, when did you come to San Diego to give testimony in this case?"

"A.     March 4th.

"Q.     And was there any reason you came March 4th?

"A.     Because my visa was going to expire right after.

"Q.     And have you since reapplied to reinstate your visa so it's going to be effective since you came here?

"A.     No, I just applied for an extension.

11

"Q.   You applied for an extension, and that's in process; is that right?

"A.   Yes."

On cross-examination of Pineda, counsel for the Estate undertook the following line of questioning:

"Q:   [A]s I understood it, sir, you came on March 4th because your visa was going to expire literally within days?"

"A:   Yes.

"Q:   Okay.  As you're here today, your visa has expired, true?"

Plaintiffs' counsel objected on relevancy grounds, and the trial court sustained the objection, rejecting defense counsel's assertion that the question "goes to credibility."[3]

The Estate argues that the trial court should not have sustained the objection to the question about the expiration of Pineda's visa because the answer would likely have undermined Pineda's credibility.  According to the Estate, "Given the lengthy process of applying for and obtaining a ruling on a visa extension, it is highly unlikely Mr. Pineda actually obtained a visa extension.  In turn, any questioning on this matter would have served to diminish his credibility."  The Estate argues that if the trial court had not sustained the objection, counsel would have been able "to show the jury Mr. Pineda had been dishonest regarding the status of his visa."

---

[3]   On redirect examination of Pineda, plaintiffs' counsel asked:
"Q:   . . . Mr. Pineda, you have applied and have a current visa, is that right, an extension on your visa?
"A:   That's right.
"Q:   [T]here's nothing illegal about your presence in the United States?
"A:   No, of course not."

We review "for abuse of discretion a decision on admissibility that turns on the relevance of the evidence in question." (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

We conclude that the trial court was well within its discretion to determine that Pineda's response to the inquiry about his current visa status would not have been relevant to attack Pineda's credibility as a witness. Although counsel for the Estate was attempting to elicit testimony from Pineda that his visa had expired, that testimony would not have called Pineda's credibility into question because it would not have contradicted anything that Pineda stated during direct examination. As we have explained, Pineda testified on direct examination that because his visa was expiring "right after" March 4, he came to San Diego on that date, instead of closer to the March 29 date of his testimony. The most logical implication from this testimony is that Pineda's visa *had expired* before March 29, and that Pineda was attempting to extend it. Further, Pineda did *not* testify on direct examination that his application to extend his expired visa *had been approved*. Instead, he testified that it was "in process." In light of that testimony, Pineda would not have been revealed as untruthful if he had testified on cross-examination that his visa had expired. Accordingly, the excluded testimony would not have been relevant to attack Pineda's credibility, and the trial court was well within its discretion to sustain the objection on the basis of relevancy.

D.    *Substantial Evidence Supports the Verdict*

The Estate contends that insufficient evidence supports the jury's verdict that Pedroza, Sr., negligently caused the collision. In a very brief and undeveloped argument, the Estate asserts that insufficient evidence supports the verdict because "[t]he only

13

established facts in this case are the occurrence of the accident, the lack of any eyewitnesses, and the presence of a parked truck." According to the Estate, "[w]ithout any eyewitnesses and without any experts, the jury's findings are merely inferences derived from speculation."

"When a party challenges the jury's findings based on insufficient evidence to support those findings, we apply the substantial evidence standard of review." (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1096.) Substantial evidence is defined as evidence of "'"'"'ponderable legal significance . . . reasonable in nature, credible, and of solid value [, and]'"' . . . '"relevant evidence that a reasonable mind might accept as adequate to support a conclusion"' . . . ."'" (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 225.) We review the record as a whole, resolving all conflicts in favor of the prevailing party and indulging all legitimate and reasonable inferences in favor of the jury's findings. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.) If the jury's findings are supported by substantial evidence, contradicted or uncontradicted, the judgment must be upheld regardless of whether the evidence is subject to more than one interpretation. (*Ibid.*)

Here, the record contains sufficient evidence to support a finding that Pedroza, Sr., caused the collision through his negligence. The photographic evidence and witness testimony supports a finding that the truck was properly parked in plain view outside of

14

the lane of traffic.[4] Based on the extensive damage to the van, as shown in the photographs, a juror could reasonably conclude that Pedroza, Sr., veered out of the normal lane of traffic and slammed into the side of the truck at a high speed. Further, because witnesses testified to the favorable weather conditions and the lack of any skid marks, squealing tires, horn sounds or any other evidence of an evasive maneuver, a reasonable juror could conclude that it was Pedroza's own inattention rather than an unexpected obstacle or foul weather that caused Pedroza to veer into the side of the truck. The fact that the family had been driving for almost a full day without sleep or extended rest breaks also supports a reasonable inference that the collision was caused by Pedroza, Sr.'s tiredness or lack of attention. The verdict is supported by substantial evidence.

---

4     To the extent that the Estate argues that insufficient evidence supports the verdict because Portillo and Pineda were purportedly not competent, as lay persons, to offer testimony about Mexican traffic law, we reject that argument. " 'It is settled law that incompetent testimony . . . if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding. [Citations.] "Evidence technically incompetent admitted without objection must be given as much weight in the reviewing court in reviewing the sufficiency of the evidence as if it were competent." ' " (*People v. Bailey* (1991) 1 Cal.App.4th 459, 463.)

DISPOSITION

The judgment is affirmed.


                                                         IRION, J.

WE CONCUR:


_____
McCONNELL, P. J.


_____
BENKE, J.

16